UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> TREVOR'S PLACE LLC, formerly § <br> known as Emmons Therapies LLC, § <br> doing business as Stable Life Concepts, § <br> § <br> Defendant. § | Civil Action No. 6:25-CV-196 |

## COMPLAINT

For its Complaint against Defendant Trevor's Place LLC, formerly known as Emmons Therapies LLC, doing business as Stable Life Concepts (hereinafter, "Defendant"), Plaintiff United States of America, by and through the United States Attorney for the Western District of Texas, alleges as follows:

### INTRODUCTION

1. Defendant provided Applied Behavioral Analysis ("ABA") therapy to TRICARE beneficiaries (primarily children of active duty military servicemembers) in and around Killeen and San Antonio.

2. Defendant inflated its ABA therapy reimbursement claims to the TRICARE program by misrepresenting the services it provided, billing for excess hours or for days when services could not have been provided, and billing for family training that was not provided or was provided in a non-reimbursable group setting.

3. The United States brings this action under the False Claims Act, 31 U.S.C. §§ 3729–3733, to recover mandatory civil penalties plus three times the amount the United States overpaid Defendant for ABA therapy provided to TRICARE beneficiaries. In the alternative, the

United States seeks to recover under the federal common law and equitable theories of payment by mistake and/or unjust enrichment.

4. The United States and Defendant entered a series of agreements tolling the statute of limitations for any civil cause of action brought under the False Claims Act or federal common law arising from ABA therapy claims submitted by Defendant to the TRICARE program between June 7, 2016, and March 31, 2021. The parties' agreements toll the statute of limitations from September 25, 2023, to March 31, 2025, a period of 554 days.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1345.

6. Defendant resides and/or transacts business in the Western District of Texas. This Court has personal jurisdiction over the defendant. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a).

## PARTIES

7. Plaintiff is the United States of America, acting through the Department of Justice and on behalf of the Defense Health Agency, a combat support agency of the Department of Defense. The Defense Health Agency manages TRICARE, 10 U.S.C. §§ 1071–1110b, a health care program that provides benefits to United States Armed Forces military personnel, military retirees, and their dependents.

8. Defendant Trevor's Place LLC, formerly known as Emmons Therapies LLC, is a Texas limited liability company. It may be served with process through its registered agent, Stephanie Emmons, at 1332 Kyleigh Drive, Salado, Texas 76571. During the period relevant to this Complaint, Defendant operated under the assumed name "Stable Life Concepts."

## THE FALSE CLAIMS ACT

9. Under the False Claims Act, the United States is entitled to recover from any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment of approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B).

10. Individuals or entities who violate the False Claims Act are liable to the United States for treble damages as well as civil penalties of not less than $13,946 and not more than $27,894 for each false claim. 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5 (adjusting civil penalty amounts for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015).

11. The False Claims Act is intended to reach "all types of fraud, without qualification, that might result in a financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).

12. A person acts "knowingly" when he or she "has actual knowledge," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). Liability does not require "proof of specific intent to defraud." *Id.* § 3729(b)(1)(B).

13. A "claim" under the False Claims Act includes "any request or demand, whether under a contract or otherwise, for money or property … that is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A)(i).

14. A claim may be "factually false" or "legally false." *United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, 133 F.4th 395, 403 (5th Cir. 2025). A claim is factually false when the information provided to the government for reimbursement is inaccurate. A claim is

legally false when a claimant falsely certifies compliance with a statute or regulation. *United States ex rel. Ruscher v. Omnicare, Inc.*, 663 F. App'x 368, 373 (5th Cir. 2016) (per curiam).

15. The term "material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

## FACTS

### I. ABA Therapy

16. Autism Spectrum Disorder ("ASD") is a lifelong neurodevelopmental condition that hinders or limits how people behave, communicate, and interact with others.

17. ABA therapy is a type of behavioral therapy intended to improve social skills for individuals with ASD and other developmental disorders.

18. ABA therapy aims to increase positive behaviors and decrease negative behaviors through positive reinforcement and working to change the social consequences of existing behavior.

19. ABA therapy includes the use of direct observation, measurement, and analysis of the relations between an environment and behavior.

20. ABA therapy may be provided by:

   a. A Board-Certified Behavior Analyst ("BCBA"), who is an independent practitioner with a graduate degree who can provide services or supervise the work of other professionals;

   b. A Board-Certified Assistant Behavior Analyst ("BCaBA"), who is an individual with an undergraduate degree working under the supervision of a BCBA; or

   c. A Registered Behavior Technician ("RBT"), who is a paraprofessional that assists in delivering services under the supervision of a BCBA or BCaBA.

4

## II. TRICARE Coverage for ABA Therapy

21. TRICARE, formerly known as the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"), provides health care coverage for active-duty military personnel, military retirees, and military dependents.

22. ABA therapy was a covered benefit for TRICARE beneficiaries with a diagnosis of ASD pursuant to the TRICARE Comprehensive Autism Care Demonstration in effect during the period relevant to the Complaint. *See* 79 Fed. Reg. 34,291 (June 16, 2014); TRICARE Operations Manual 6010.59-M, Chapter 18, Section 4 (Apr. 1, 2015).

23. TRICARE covered only one-on-one ABA therapy by a licensed provider, such as a BCBA or an RBT operating under the supervision of a BCBA.

24. TRICARE did not reimburse group therapy (i.e., simultaneous treatment of multiple individuals who are performing the same or similar activities) or concurrent therapy (i.e., simultaneous treatment of multiple individuals who are not performing the same or similar activities).

25. TRICARE did not reimburse billing for multiple ABA providers' time during one ABA session with a child when more than one ABA provider was present.

26. TRICARE Operations Manual 6010.59-M, Chapter 18, Section 4, which was in effect during the period relevant to this Complaint, identifies other categories of non-reimbursable services. Among other things, TRICARE providers were ***not*** permitted to bill for:

    a. driving to and from ABA therapy appointments;

    b. educational and/or academic rehabilitation;

    c. educational services;

    d. custodian, personal care, or childcare services; or

    e. indirect supervision.

27. ABA therapy is billed using time-based procedure codes. Between 2014 and 2018, providers billed TRICARE for ABA therapy in 30-minute increments. Beginning in 2019, providers billed TRICARE for ABA therapy in 15-minute increments.

28. Providers were required to retain medical documentation supporting each claim for reimbursement, including:

   a. The date and time of the therapy session;

   b. The length of the therapy session;

   c. The legible name of the rendering ABA therapy service provider, including the provider's certification type/level (e.g., RBT or BCBA);

   d. The signature of the rendering ABA therapy service provider;

   e. A statement summarizing the therapeutic interventions that were attempted during the therapy session;

   f. A description of the response to therapeutic interventions and the outcome of the therapy session; and

   g. A statement summarizing the patient's degree of progress towards therapy goals and therapy plan.

29. Compliance with the TRICARE Comprehensive Autism Care Demonstration, including the relevant provisions of TRICARE Operations Manual 6010.59-M, was material to DHA's decision to pay ABA therapy claims.

### III. ABA Therapy Provided by Defendant

30. Defendant provided ABA therapy, speech therapy, occupational therapy, and counseling services to patients at clinic locations in Harker Heights, Killeen, and San Antonio.

31. Defendant marketed its services to parents as an alternative to public schooling, with therapy and academic instruction conveniently performed in the same place.

32. From on or about June 7, 2016, to on or about March 31, 2021, TRICARE paid Defendant more than $1.58 million for ABA therapy services provided to 211 beneficiaries.

33. TRICARE paid Defendant more than it was entitled to receive because Defendant misrepresented the services it provided, billed for excess hours or on days when services could not have been provided, and billed for family training that was not provided or was provided in a non-reimbursable group setting.

A. **Defendant Misrepresented the Services It Provided**

34. Defendant billed TRICARE for every minute spent with patients, regardless of whether the activity was within the scope of an individual patient's treatment plan or otherwise qualified as ABA therapy.

35. Younger patients rotated between ABA therapy and non-reimbursable activities such as story time, singing, and playing games with other patients. Defendant billed all of this as ABA therapy. Defendant even billed for lunch and bathroom breaks.

36. To obtain reimbursement for activities that did not qualify as ABA therapy, Defendant told its providers to misrepresent the nature of certain activities.

37. For example, TRICARE beneficiaries were frequently taken on group outings described as "natural environment training." An RBT employed by Defendant told the United States she did not consider these outings to be clinical ABA therapy, instead referring to them as "field trips." The RBT nevertheless documented the outings as ABA therapy in her session notes using language dictated by Defendant.

38. Defendant also billed TRICARE for purely academic services offered through an online homeschooling curriculum provider. TRICARE beneficiaries who were enrolled in the program spent approximately 50 to 60 minutes conducting homeschooling twice a day.

7

39.     One BCBA recalled that her role during homeschooling sessions was to sit next to her patient and provide help as needed. BCBAs and RBTs were directed by Defendant to document such time as "non-preferred activity" in session notes.

40.     Defendant's RBT Training Manual specifically directed providers to avoid using the name of the online homeschooling program in session notes and to instead describe the time as "nonpreferred or less preferred activity."

41.     Defendant charged parents an additional fee if their child was enrolled in this homeschooling program. This "tuition" was charged notwithstanding the fact that Defendant was also seeking reimbursement from TRICARE for time spent by patients on the online homeschooling platform.

42.     Defendant also instructed its providers to attempt one-on-one ABA therapy in vehicles while transporting clients to or from outings. Defendant would then bill the transportation time as ABA therapy. Defendant instructed employees to ask questions of clients while transporting them and bill the time as "work on conversation skills."

43.     Had it known the truth about the nature of the services provided, TRICARE would not have reimbursed for field trips, transportation to and from ABA therapy appointments, educational services, childcare services, or other non-ABA services provided by Defendant.

**B.  Defendant Billed More Than 8 Hours Per Day Per Therapist and Billed for Therapy on Days When the Clinic Was Not Open**

44.     Defendant was open for business and provided ABA therapy only from 9:00 am to 3:00 pm, Monday through Friday. On occasion, therapists saw clients for two additional hours in the afternoon, from approximately 3:30 pm to 5:30 pm.

45. Although therapists could at most spend no more than 8 hours in a single day with their patients, Defendant routinely billed TRICARE for more than 8 hours per day for individual ABA providers.

46. Upon information and belief, Defendant billed TRICARE for more than 8 hours per day per ABA provider because Defendant provided group therapy, billed for multiple providers in a single session, and billed for time and/or services that were not reimbursable.

47. Regardless of the reason for the excess billing, it was not possible for Defendant's RBTs and BCBAs to have provided ABA therapy services for the total number of hours billed to TRICARE each day.

48. **Exhibit 1** to this Complaint identifies 1,327 instances in which Defendant billed TRICARE for more than 8 hours of a therapist's time on a given day. In several instances, Defendant billed for more than 24 hours in a single day.

49. TRICARE paid Defendant approximately $132,400 for ABA therapy billed in excess of 8 hours in a day.

50. Defendant also billed TRICARE for therapy on weekends and holidays, even though Defendant's clinic was not open on those days.

51. **Exhibit 2** to this Complaint identifies 135 claims for ABA therapy on a weekend submitted by Defendant to TRICARE.

52. **Exhibit 3** to this Complaint identifies 12 claims for ABA therapy on a holiday submitted by Defendant to TRICARE.

53. TRICARE paid Defendant $24,877 for services allegedly rendered on weekends and holidays.

### C. Defendant Improperly Billed for Family Training

54. In addition to ABA therapy provided directly to patients, TRICARE pays providers for "family adaptive behavior treatment guidance" (i.e., family training).

55. To continue billing ABA therapy, TRICARE requires therapists to provide family training or justify why it was not provided.

56. The United States spoke with 10 parents of ABA therapy patients for whom Defendant billed TRICARE for family training.

57. Of the 10 parents interviewed, 8 did not participate in family training and 2 participated in family training in a group setting, even though the TRICARE policy manual states that ABA therapy services in a group setting are not covered.

58. **Exhibit 4** to this Complaint identifies 614 claims for family training submitted by Defendant to TRICARE.

59. In total, Defendant billed TRICARE $67,695 for family training during the period relevant to this Complaint.

## COUNT I
### Violation of the False Claims Act
### 31 U.S.C. § 3729(a)(1)(A), (B)

60. The United States realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

61. Defendant knowingly presented, or caused to be presented, one or more false or fraudulent claims, and/or made or caused to be made a false record or statement material to a false or fraudulent claim, seeking reimbursement for ABA therapy services provided to TRICARE beneficiaries.

62. The false or fraudulent claims and/or statements were material to TRICARE's decision to make payments to Defendant.

63. As a result of the false claims the defendants submitted or caused to be submitted, the United States sustained damages in the form of payments to Defendant.

64. Defendant is liable to the United States for three times the damages sustained by the government, plus a civil penalty of not less than $13,946 and not more than $27,894 (as adjusted by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015) for each false claim presented or caused to be presented and/or each false record or statement material to a false or fraudulent claim.

## COUNT II
## Payment by Mistake

65. The United States realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

66. TRICARE paid Defendant based on a mistaken and erroneous understanding of material fact, namely, that the claims, records, and statements Defendant presented and caused to be presented for payment were true, accurate, and eligible for payment.

67. TRICARE, acting in reasonable reliance on the truthfulness and accuracy of the claims, records, and statements defendants presented and caused to be presented, paid Defendant monies it was not entitled to receive.

68. Defendant must account for and repay to the United States all funds paid to them by mistake, in an amount to be determined at trial.

## COUNT III
## Unjust Enrichment

69. The United States realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

70. Defendant unlawfully obtained and benefited from TRICARE payments it was not entitled to receive.

71. Defendant would be unjustly enriched if it were permitted to retain the TRICARE payments.

72. Defendant must account for and disgorge to the United States all payments by which they have been unjustly enrichment, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America prays for judgment in its favor and against Defendant Trevor's Place LLC, formerly known as Emmons Therapies LLC, doing business as Stable Life Concepts, as follows:

A. On Count I (False Claims Act), treble the amount of the United States' damages in an amount to be proven at trial, together with the maximum civil penalties allowed by law, costs, post-judgment interest, and any such other relief as the Court deems just and proper;

B. On Count II (Payment by Mistake), all funds paid to Defendant by mistake, in an amount to be determined at trial, together with costs, pre- and post-judgment interest, and any such other relief as the Court deems just and proper; and

C. On Count III (Unjust Enrichment), the amount by which Defendant was unjustly enriched, together with costs, pre- and post-judgment interest, and any such other relief as the Court deems just and proper.

Dated: May 9, 2025                                  Respectfully submitted,

                                                    MARGARET F. LEACHMAN
                                                    Acting United States Attorney

                                                    */s/ Thomas A. Parnham Jr.*
                                                    THOMAS A. PARNHAM JR.
                                                    Assistant United States Attorney
                                                    Texas State Bar No. 24146529
                                                    903 San Jacinto Blvd, Suite 334
                                                    Austin, Texas 78701
                                                    (512) 916-5858 (phone)
                                                    (512) 916-5854 (fax)
                                                    thomas.parnham@usdoj.gov

                                                    ***Counsel for Plaintiff***
                                                    ***United States of America***